**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GG CAPITAL, a California general partnership; et al., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> DEUTSCHE BANK AG, a German corporation, <br><br> Defendant - Appellee. | No. 14-55852 <br><br> D.C. No. 8:12-cv-02213-JLS-RNB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Submitted June 10, 2016[**]
Pasadena, California

Before: RAWLINSON and BEA, Circuit Judges and SEEBORG,[***] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Richard Seeborg, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

Plaintiffs-Appellants GG Capital and associated entities ("GG Capital") appeal from the district court's dismissal with prejudice of their First Amended Complaint ("FAC"), which alleged causes of action for fraud and negligent misrepresentation against Defendant-Appellee Deutsche Bank AG. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

As demonstrated by GG Capital's own FAC, it knew from the very beginning, based on Deutsche Bank's representations, that the majority of its investments had approximately a .051% chance of hitting the "sweet spot," with one option pair having a .091% chance. GG Capital's own allegations thus show that Deutsche Bank simply did not make a misrepresentation to GG Capital regarding the likelihood that the "sweet spot" would be hit; it is *not* inconsistent to say that something that has an "actual possibility" of a .051% chance of happening has "virtually no chance" of happening. The "possibility" is *precisely* the "chance." And nothing in the 2010 Non-Prosecution Agreement ("NPA") suggests that Deutsche Bank's recording of the investments as having no risk to Deutsche Bank in its internal risk management system meant that Deutsche Bank would not have calculated the sweet spot properly or paid out the sweet spot if it hit. GG Capital's own Opening Brief seems to recognize that how Deutsche Bank internally manages its own trading risks is not evidence of any misconduct. GG Capital acknowledges

2

that "Deutsche Bank never represented it would hedge the sweet spot risk," and that "banks in general, and Deutsche Bank in particular, routinely ma[k]e the business decision to assume (not hedge) certain trading risks . . . ." As such, GG Capital has failed plausibly to plead that Deutsche Bank made any misrepresentations to it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Estate of Wright*, 90 Cal. App. 4th 228, 238 (2001) ("[T]rue statements . . . do not constitute fraud."). The district court did not err in dismissing GG Capital's First Amended Complaint.[1]

---

[1] Alternatively, the district court did not err in dismissing GG Capital's First Amended Complaint on the ground that the fraud-based claims were barred by the three-year statute of limitations in Cal. Code Civ. Pro. § 338(d). Because the underlying options transactions (and Deutsche Bank's representations) occurred in 2000 and 2001, GG Capital relies on the "discovery rule" to toll the statute of limitations for its claims. "The discovery rule delays accrual only until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (2005) (internal quotation marks and alterations omitted). GG Capital alleges that it could not have known of Deutsche Bank's alleged misrepresentations until December 2010, when Deutsche Bank's NPA disclosed (1) that "there was virtually no chance that the sweet spot would be hit"; and (2) that Deutsche Bank had not hedged for the risk that the sweet spot would hit, and instead "recorded the [investments] in its internal risk management system as having [no risk to Deutsche Bank]." But the 2010 NPA contained no information that GG Capital did not already know by *at least* 2008, so the NPA could not have been the *first* trigger to GG Capital's inquiry notice. GG Capital's FAC was not filed until 2013, and thus

(continued...)

**AFFIRMED.**

---

[1](...continued)
its fraud and negligent misrepresentation claims are barred by the statute of limitations.